LILLIAN C. HOUSE v. JESSIE M. C. CALLICOTT ET AL.

1. WILLS. *Threats to contest. Party in interest. Agreement to annul. Controversy. Settlement. Consideration.*

Threats to institute proceedings to set aside a valid will, or to cause others to do so, made by the father of the testator, having no legal status to contest the will, do not constitute a controversy the compromise of which will be a sufficient consideration to support a contract by which the widow of the testator agreed with him to make a contribution enlarging a legacy given to his grandchild.

2. FAMILY SETTLEMENTS. *Outsiders.*

Family settlements can be made only between parties in interest, not between one party in interest and an outsider on his threat to create trouble in the family.

FROM the chancery court of Tate county.

HON. JAMES C. LONGSTREET, Chancellor.

Mrs. House, appellant, was complainant in the court below, and Mrs. Callicott and others, appellees, were defendants there.

From a decree in defendant's favor complainant appealed to the supreme court. The facts are stated in the opinion of the court:

*Johnson & Johnson,* for appellant.

The authorities in this state sustain compromises where a suit is threatened on a doubtful claim, even though after developments may disclose that there was a perfect defense. Indeed, it is not competent to inquire what defenses might have been interposed to the claim had suit been brought upon it, the inquiry is restricted to whether or not the promisee in the contract of compromise was honestly asserting a claim which he had reasonable grounds to believe there was a chance to win. *Swanson v. Griffin,* 68 Miss., 319; *Boone v. Boone,* 58 Miss., 820; *Jackson v. Illinois, etc., R. R. Co.,* 76 Miss., 607.

By the instrument and by the testimony of all witnesses who say anything on the subject the contract in suit is the result of a compromise as to the contest of the will of H. M. Callicott.

What then does it devolve on complainant to show in order to support a contract with good consideration? Certainly not incapacity of testator or undue influence, or that he was asserting claim which would have prevailed on trial; in this suit those questions are not at issue, but merely that he preferred a claim in good faith which either was doubtful or so considered by the parties at the time, and that the same was settled by the agreement, the parties mutually releasing their respective rights. If, on the other hand, the claim preferred by complainant or her grandfather acting for her, J. C. Callicott, was without any reasonable hope of success from the then point of view, and not in the light of facts afterwards known and measured by the correct principles of law, if in other words the transaction was a mere threat to extort money, the consideration is insufficient. There is greater harmony in the decisions of various states on this point of law than is usual or would be expected. And almost without exception the division of such contracts into en-

forceable and unenforceable has been along the line above mentioned.

The law is clearly stated in *Bellows* v. *Sowles,* 55 Vt., 391; 45 Am. Rep., 621, a case in which beneficiaries under will agree to pay an heir at law, who was cut off and threatened a contest on ground of undue influence, a certain sum of money in consideration of his desisting. "The plaintiff (heir at law) was neither bound to allege nor prove that undue influence had been used to procure the making of the will. But he was, when that was brought in question, bound to show that he honestly thought he had good and reasonable ground for making the claim that the will, so far as it related to him, was the production of undue influence, and for that reason he honestly intended to oppose its establishment. Whether the plaintiff, acting as a reasonable, prudent and conscientious man, had good ground to believe undue influence had been used, and for that cause he had good reason to doubt the validity of the will, and therefore honestly proposed to oppose its establishment, or whether he had no ground to believe undue influence had been used and so had no good reason to doubt the validity of the will and dishonestly put the same forth as a ground of opposition to the establishment of the will, makes a very material difference in regard to the consideration his action would afford to support the defendant's promise to pay him $5,000 for forbearing to oppose the establishment of the will. On the first supposition his forbearance would be yielding of a right which he honestly upon reasonable grounds supposed existed and intended to assert, and would furnish ample consideration for the defendant's promise. On the latter hypothesis his opposition to the will was dishonest, unfounded, factitious and set up to extort money from the defendant. In short, his opposition to the will, if successful, would be a blackmailing operation. There is no essential conflict in the authorities produced by the parties on this subject. Cases can be found where no claim is made but that the compromised right was an honest one, honestly entertained and asserted, and in

which no deference is made to the *bona fide* character of the transaction. The doubtful right compromised, to be a good consideration for a promise, must upon reasonable grounds be honestly entertained. It is neither necessary to allege nor prove that the right actually existed.

Our investigation has not brought to our notice a single authority in conflict with the law thus stated, supported as it is by reason and common sense. But authorities in its support are numerous; the decisions on various facts causing of course some apparent conflict.

In addition to the authorities already cited, see *Grandin* v. *Grandin,* 49 N. J. Law, 508, 60 Am. Rep., 642. After settlement the court will not inquire into adequacy of consideration. See also *Seaman* v. *Seaman,* 12 Wend., 381; *Farmers Ins. Co.* v. *Chestnut,* 99 Am. Dec., 492; *Flannagan* v. *Kilcome,* 58 N. H., 443; *Stoddard* v. *Mix,* 14 Conn., 12; *Hartle* v. *Stahl,* 27 Md., 157.

The law which is above stated and which governs the case at bar is not denied in *Gunning* v. *Royal,* 59 Miss., 45, cited by appellee to support her contention.

There is a distinction between forbearing to sue and compromising doubtful claims, in the former there must be valid demand to some extent or for something; in the latter, compromising or settling doubtful claims, if they be not wholly illegal or unfounded, is a good consideration for a promise. 1 Pars. on Contr., 439; *Barlow* v. *Ocean Ins. Co.,* 4 Metc., 270; *Williams* v. *Alexander,* 4 Ired. Eq., 207; *McKinley* v. *Watkins,* 13 Ill., 140; *Stoddard* v. *Mix,* 14 Conn., 12.

*Warriner & Warriner* and *J. F. Dean,* for appellees.

There are many Mississippi cases that hold that a want or failure of consideration can be shown by parol. The right is recognized in *Foster* v. *Metts,* 55 Miss., 77; *Boone* v. *Boone,* 58 Miss., 820; *Gunning* v. *Royal,* 59 Miss., 45; *Ohleyer* v. *Bernheim,* 67 Miss., 75; *Grayson* v. *Brooks,* 64 Miss., 410.

What is a valid or legal consideration? Adversary counsel below argued that, to prevent controversies, disputes, and threatened litigation, to compromise doubtful rights and to adjust family difficulties, presented good and valid considerations. This may be true in its verbiage, but what are controversies, disputes, litigations, etc., in such cases? Mere disputes, differences, threatened litigation, etc., are not sufficient; they must be substantial and material between the parties; they must exist in fact as well as in name. Counsel also argued that the slightest consideration was sufficient. Theoretically this may be true, but in cases of this kind the giving of further time, and even compromises of asserted rights, which are ordinarily good legal considerations, do not apply if the original consideration behind the forbearance or compromise had no substantial existence in fact. A resort to the cases themselves will furnish the instructive guide. The principles of this case on this point have been settled in Mississippi, as we submit, and we need not go to the decisions of other states that may differ from ours.

Let us consider the Mississippi cases which meet these questions and are controlling, despite what the courts of other states may hold. *Newell* v. *Fisher, Admr.,* 11 Smed. & Mar., p. 431. (1848) syllabus.

A father had been induced while in a state of intoxication, to execute his note for the indebtedness of his adult son, which he had refused to do when sober, after the maturity of the note, and while in a state of sobriety, promised the holder to pay the note if he would wait until fall. Held, that the note having been given during a state of intoxication, and without any consideration whatever, it could be rendered valid by the subsequent promise and forbearance; the holder of the note could have made no previous demand on which a recovery could have been had to make the forbearance to sue a legal consideration.

From this case it would seem that the giving of time or forbearance to sue, which are ordinarily good legal considerations,

are not such considerations when the original transaction back of the promise had no then existing consideration.

We submit that also in a proper case there would be no legal difference in principle between a temporary and permanent forbearance, so far as this question is concerned.

*Foster* v. *Metts,* 55 Miss., p. 77 (1877). In this case the rider, who carried the U. S. mail for certain contractors, stole money out of a letter of the mail while in his charge. The party, Foster, who had remitted the money by letter, claimed that the contractors were liable for the acts of the person whom they employed to carry the mail. The contractors at first refused to recognize their liability for the loss, but finally, on the owner of the money agreeing to wait a few months for payment, gave their note for the amount claimed, due at the time agreed on. The note was not paid at maturity, and suit was brought on it. The declaration set out the facts which led to the giving of the note. The contractors demurred, and the holder of the note (the plaintiff), sued out a writ of error. Held, a contractor for carrying the mail is not liable to the loser for money stolen from the mail by the rider or driver employed by him to carry it, and a promissory note, given by a mail contractor for money stolen from the mail by his agent or employe carrying the same, does not create any liability against the maker thereof. And in such case, the agreement of the loser to forbear suit a certain time, and his acceptance of a promissory note payable accordingly, do not constitute any legal consideration for the giving of the note.

In this case appears:

1. Claim of liability on one side.

2. Denial of liability on the other side.

3. A consequent dispute between them, honestly made.

4. Agreement to pay the amount claimed, if further time was given.

5. A written promise to pay at the time agreed, and in the form of a note.

6. A refusal to pay, suit brought, and want of consideration pleaded.

7. Court held there was no consideration for said note, as mail contractors were not liable for the original "extraction of the money" (original consideration behind the note) ; and they did not make themselves liable by giving the note (which embraced forbearance of time).

8. Court say: Compromise of doubtful rights is a sufficient consideration for a promise to pay, but compromise implies mutual concession. Here there was none on the part of the payee of the note. His forbearance to sue for what he could not recover at law or in equity was not a sufficient consideration for the note.

*Boone* v. *Boone*, 58 Miss., p. 820 (1881): Suit on a promissory note executed in compromise of an alleged doubtful claim in lands. Plaintiff replied setting up the fact that the note was given in compromise of the equitable claim of the plaintiff to certain land of which the defendant claimed to be the owner. The claim was of doubtful validity, and plaintiff was about to bring suit on it, when it was settled by the relinquishment by plaintiff of his claim in consideration of the execution of the note sued on. The defendant demurred to this replication, and it was overruled. He then traversed the replication and issue being joined, upon trial there was a verdict and judgment for plaintiff, and defendant appealed.

The court say: "The compromise of doubtful rights is a sufficient consideration for a promise to pay money. It is sufficient if the claim be doubtful. A mere controversy between the parties is held not to be sufficient." . . .

"Here the replication shows that plaintiff had a claim of doubtful validity, which he was about to asert by suit, when a compromise was mutually entered into and in which the note was executed. This was sufficient, and if the defendant below desired to dispute the doubtful character of the claim, to settle

which he executed the note, he should have *rejoined*.    It was for him to show the want of consideration."

In this case it appeared:

1. That the replication set out facts showing a *"prima facie doubtful"* claim between the parties, on which suit was threatened, and which was compromised by the note sued on.

2. That the only error assigned by appellant in this court was error of inferior court in overruling his demurrer to this replication.

3. That the burthen of proof was on defendant (below) to show want of consideration; and if he desired to dispute the "doubtful" character of the claim for which the note was given, he should have rejoined.

4. That evidently the trial below showed a "doubtful" claim and the verdict and judgment was for plaintiff below.

*Gunning* v. *Royal,* 59 Miss., p. 45 (1881) : In this case Gunning hired a mare and cart from Royal to remove some dirt from a hill.    The boy who drove the cart, by some inattention, exposed the mare and cart to danger from the caving dirt, and the mare was killed.    Royal demanded from Gunning $150 for his loss.    Gunning denied liability, but after a long dispute and an ineffectual attempt at arbitration, gave his note for $66 in settlement of the controversy.    The note was not paid, and suit was brought on it.    Gunning pleaded want of consideration.    A jury was waived and the case tried by the court, who gave judgment for plaintiff, and Gunning appealed.

The court say: "The facts disclosed by the evidence acquit Gunning of all blame with respect to the injury of the mare and cart he had hired of Royal.    He was, therefore, not legally answerable to Royal for the loss he suffered, or any part of it, and the giving of his note in settlement of the *controversy* did not preclude him from showing that he was not legally liable for the payment of the sum promised.    The existence of a dispute or controversy between the parties is not a sufficient consideration to support a promise to pay money in settlement of it where

no valid demand for anything whatever exists in favor of the promise. There must be a valid demand to some extent, or for something, to uphold a promise of this kind. Giving a note to settle a dispute or controversy does not impose any liability on the maker if he gains nothing and the payee loses nothing by it. In such case it devolves on the maker of the note, when sued, to show the entire want of any consideration for his promise, and Gunning did so in this case."

In this case appears:

1. An honest claim of liability on one side.

2. A denial of liability on the other.

3. A long dispute between the parties in apparent good faith.

4. An ineffectual attempt at arbitration.

5. A compromise between the parties by which plaintiff below accepted for the loss less than one-half of his asserted claim.

6. Defendant below was not liable for note because he was not liable for the original claim, and this was so although the parties were honest in their respective contentions, attempted to arbitrate, and finally compromised for much less than was claimed.

It was a very ancient rule of law that a promise to pay money in consideration of a forbearance to sue, where there is no legal cause for action, is without consideration and void. *Palfrey* v. *Railroad,* 4 Allen (Mass.), pp. 55, 57. Citing authorities.

There is an Alabama case very similar in its facts to the case on hearing, where there was a promise to pay money to an heir if he would not contest a will; and there having been a refusal to pay the money suit was brought on the promise. The defense was "no consideration" and it was sustained. We invite attention to this case. *Prater* v. *Miller,* 25 Ala., p. 320; 60 Am. Dec., p. 521. See also *Martin* v. *Black,* excr., 20 Ala., 309; *Jarvis* v. *Sutton,* 3 Ind., 289; *Sharp* v. *Rogers,* 12 Minn., 174; *Merchants' Bank* v. *Davis,* 3 Ga., 112; *N. H. Savings Bank* v. *Colcord,* 15 N. H., 119; Story on Contracts, secs. 436, 449, 456; 1 Wait's Act & Def., pp. 96-97; 1 Parson on Notes & Bills, 119;

1 Selwyn N. P., 50; Chitty on Contracts, 9, 10, 50; 52 Eng. Com. Law, 548; and many other authorities.

We submit that the principles of the four Mississippi cases cited, without regard to cases from other states, are conclusive in favor of the appellees under the facts of this case.

Argued orally by *H. C. Warriner,* for appellees, by *Eugene Johnson* and *Harper Johnson,* for appellants.

CALHOON, J., delivered the opinion if the court.

Henry M. Callicott, being a widower with one child, Lillian, who is the appellant, married the appellee Jessie, by whom he had two other children, and he made a holographic will, and died leaving a considerable estate and his widow and three children. This will gives to each of these children $10,000, and the residue of his estate to his wife, the appellee, Jessie M. C. Callicott, charged "to educate, support and nourish" the children. Mrs. Lillian House, the child of the first marriage, filed her bill charging that her father, Henry M. Callicott, was under undue influence when he made this will, and was wholly incapable mentally of making it when he did make it; and she urges that a paper, which will hereinafter be set out in full, signed by the widow after his death, should be established as a valid act. Appellee, Jessie M. C. Callicott (defendant below), denies the material allegations of the bill, and, as to the paper signed by her, says it was without any consideration whatever, and signed when she was in great affliction, and at the request of J. C. Callicott, the paternal grandfather of appellant, and as a concession to his wishes, she having for him the love of a daughter. There is nothing in the averments of undue influence over the testator or unsoundness of mind when he executed the will, and neither is seriously insisted on, the real contention being over the validity of the paper signed by appellee, said to be good as a compromise or as a family settlement. No court could fail on the evidence to sustain the will, as was done by the court below, and

in the action dismissing the bill the chancellor must have believed, as he was warranted in believing, the facts to be as we will set them out. The most beautiful relations of love and devotion existed between the testator and his wife and children, and between all of them and his father, J. C. Callicott, at whose house the testator and his family had lived at one time for two or three years. The testator died on November 17, 1899, and was buried the next day, November 18th. On the next day, but one after the burial, Monday, November 20th, his father, J. C. Callicott, came to his daughter-in-law's house immediately after breakfast and asked the widow to let him see the will. She was in great distress, had never even read the will, and had refused to let her husband in his lifetime read it to her or talk about its contents, as he had wanted to do, and so she was entirely ignorant of any of its provisions. But at her father-in-law's request she went to her deceased husband's private papers, got the instrument, and handed it to his father, who, after reading it, said that, "if he had seen Henry, and talked with him, he did not think he would have written it that way," and he asked the widow to give Lillian one-fourth of the personal estate. She answered that she preferred the will to remain as her husband had written it, to which he replied harshly that, if she did not, he intended to break the will, but did not state any grounds on which he could do so. On the 23d of that month he came again to the house, and they went to town together, and she signed the paper, because, as she says: "I had always had such confidence in him and felt so drawn to him, . . . I didn't make the paper because I was afraid of him breaking the will, not in the least. It was signed just simply to have no unpleasantness in the family and with the father of such a devoted son." It must be noted that J. C. Callicott, after the first interview, and before his daughter signed, had made inquiries and taken advice, and found that he could not break the will, of all which his daughter-in-law was in total ignorance. When she signed the paper J. C. Callicott took charge of it, and has had it ever since in his pos-

session.   Afterwards his granddaughter, Lillian, the appellant, contracted a marriage that did not please him, and he came again to appellee, Jessie, and he and she signed a cancellation of the paper, written across its face.   The paper and its cancellation are as follows:

"STATE OF MISSISSIPPI, TATE COUNTY.

"Whereas the will of H. M. Callicott, this day probated, gives and bequeaths to each of his children the sum of ten thousand dollars, and to his wife, Jessie May Carver Callicott, all the residue of his estate, and whereas, one of his children, Lillian Clay Callicott, is not the child of the said Jessie M. C. Callicott, now to avoid all litigation, to compromise all differences and in the earnest desire to render exact justice to each of the children of said H. M. Callicott, I, Jessie May C. Callicott, do hereby agree and bind myself to pay to said Lillian Clay Callicott an amount in addition to said ten thousand dollars willed to her by her father, H. M. Callicott, sufficient to make the estate of said Lillian C. Callicott, including said legacy, equal to one-fourth the value of the said estate of H. M. Callicott, as shown by the inventories and appraisements taken and made in said estate.

"This additional sum is to be paid as soon after all debts are paid and as soon after the thirty thousand dollars directed by said will to be invested in bonds for the children is invested as practical.

"Witness my signature this Nov. 23, 1899.

"JESSIE MAY CARVER CALLICOTT."

Written across the face of the contract is this:

This paper was made and entered into to be executed by and between Jessie M. C. Callicott and J. C. Callicott on the day it bears date, but was never signed by the latter, though since that time held in his possession.   By agreement of said parties and for reasons satisfactory to themselves they hereby agree and declare that this paper and all the agreements and obligations

therein contained shall be hereby cancelled, abrogated and made void and of no effect whatsoever. This January 24, 1902.

"Jessie May Carver Callicott."

That Mrs. Callicott and her father-in-law were on very unequal planes when she signed the original paper will strike the average mind at once. She was at a great disadvantage. While he had no sort of legal interest in the will of his son, his idea was, as the head of the family, to substitute his own will for the will of his son, and, without any consideration whatever, he induced her to agree to give his granddaughter one-fourth of the personal estate of her husband. Under our statute only parties in interest may contest a will, and the question of interest or no interest may be made an issue, and this is triable before the issue *devisavit vel non* is tried. J. C. Callicott had no more interest in the matter than a total stranger to the family, in the eye of the law. So his threat to break the will, made to the widow, when analyzed, amounts simply to a threat that unless she gave away the property at his dictation he would incite those in interest to litigate. So it is impossible to predicate compromise on his refraining from this action as a consideration. He had nothing to compromise except a power to try to foment trouble in the family, and it would be monstrous to hold this a consideration for a compromise. This case has no kinship to the doctrines applied to family settlements. They must be between parties in interest, not one party in interest and an outsider on his threat to create trouble in the family. No earthly consideration moved from J. C. Callicott or Mrs. House; there was in the premises no legal duty owing by the widow to either of them, and the actual rights of Mrs. House under the will are not in the slightest degree affected.

*Affirmed.*